UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No.  ED CV 20-01177 RAO <br><br><br> **MEMORANDUM OPINION AND ORDER** |

I.      **INTRODUCTION**

Plaintiff Carolina C. ("Plaintiff") challenges the denial by the Commissioner of Social Security ("Defendant") of her applications for disability insurance ("DI") and supplemental security income ("SSI").  She contends that the Administrative Law Judge ("ALJ") erred in determining that she would be able to perform work existing in the national economy.  For the reasons stated below, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

\\

\\

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On September 27, 2017, Plaintiff constructively filed a Title II application for DI and a Title XVI application for SSI, alleging that she had been disabled since September 13, 2017. (Administrative Record ("AR") 196, 206, 234.) Her applications were denied initially and upon reconsideration, and she requested and was granted a hearing before an ALJ. (AR 128.) Following a hearing on May 23, 2019, at which Plaintiff appeared with counsel, the ALJ found that Plaintiff had not been disabled at any time from her alleged onset date through June 17, 2019, the date of decision. (AR 16-29, 34-64.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-5.) This action followed.

## III. DISCUSSION

Plaintiff contends that the ALJ erred in finding that she could perform medium work and in discounting her testimony regarding her physical and mental limitations. (JS at 4-12, 21-26.)

The ALJ followed the five-step sequential evaluation process set forth by regulation to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The ALJ found that Plaintiff's osteoarthritis, chronic low back pain, post-traumatic stress disorder ("PTSD"), and depression were severe impairments but did not find that Plaintiff's fibromyalgia was a severe impairment. (AR 22.) The ALJ determined that Plaintiff had the residual functional capacity to perform medium work, except that she could perform "detailed but not complex tasks." (AR 24.) In reaching this finding, the ALJ rejected Plaintiff's testimony that, among other things, she was constantly in pain, could not get out of bed several days a week, and could not concentrate. (AR 24-25.) After finding that Plaintiff could not perform any of her past relevant work, the ALJ adopted the testimony of a vocational expert, who opined that an individual of Plaintiff's age, work experience, and a residual functional capacity allowing her to

2

do medium work but not complex tasks would be able to perform the work of a warehouse worker or a laundry worker. (AR 27-29.) Accordingly, the ALJ found that Plaintiff was not disabled at any time through the date of decision. (AR 29.)

### A. The ALJ's Residual Functional Capacity Determination

Plaintiff first contends that the ALJ erred in determining that she could perform medium work.[2] (JS at 5-9.) She argues primarily that the ALJ erred in not finding that her fibromyalgia is a severe impairment and further argues that the medical record establishes that she suffers from joint pain and fatigue, has a decreased range of motion in her lumbar spine, and has weakness in her right (dominant) hand. For the following reasons, the Court concludes that the ALJ did not err in declining to include additional physical limitations in the residual functional capacity assessment.

The ALJ is responsible for assessing a claimant's residual functional capacity "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p, 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff points to a September 27, 2017 examination by Dr. Thomas Chen that found "over [eight] tender points in [Fibromyalgia] areas" (AR 407), as well as to a February 20, 2019 examination by the same doctor that reported "14/18" tender points (AR 817). Plaintiff further notes that the record evidences numerous

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

complaints of joint pain, fatigue, and dizziness as well as medical findings of swelling and tenderness in her hands, elbows, and knees.  (JS at 6-8.)   Plaintiff points to a March 28, 2018 physical therapy note reporting that she could not stand or walk for more than 15 minutes.  (AR 646.)  Additionally, Plaintiff notes that a February 1, 2019 blood test indicated a rheumatological disorder (AR 784) and that on March 11, 2019, Dr. Anthony Lin diagnosed "an undifferentiated connective tissue disorder," osteoarthritis, and fibromyalgia.  (AR 835.)

      The ALJ concluded that Plaintiff had not demonstrated that her fibromyalgia was a severe impairment, pointing out that Dr. Chen's September 2017 exam found only eight tender points and that his February 2019 exam did not establish that Plaintiff had 11 tender points "present in all quadrants, including the upper and lower body."  (AR 22.)[3]   The Court defers to the ALJ's reasonable interpretation that the September 2017 examination, while noting "over" eight tender points, did not expressly find 11 tender points.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.") (citation omitted).  As to the February 19 exam, the Court finds that the ALJ was at least rational in concluding that tender points were not found in all four quadrants of the body.  (*See* Social Security Ruling 12-2p, noting nine tender point sites on each of the left and right sides of the body, of which 12 are above the waist and six below.)[4]   Thus, the

---

[3] Under the "first set of criteria" set forth in Social Security Ruling 12-2p, "a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may 'fluctuate in intensity and may not always be present'); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain." *Revels v. Berryhill*, 874 F.3d 648, 656–657 (9th Cir. 2017).  The parties have not argued that the second set of criteria applies in this case.

[4] Plaintiff argues that an examination by Dr. Kanchana Keerthipala on February 1, 2019, which revealed tenderness in both hands and both knees (AR 777-78), rebuts this finding.  (JS at 8.)  The Court disagrees.  Dr. Keerthipala's examination did not

ALJ's determination that the medical record did not establish that Plaintiff's fibromyalgia was a severe impairment is supported by substantial evidence.

Even if the ALJ erred in not finding that Plaintiff's fibromyalgia was a severe impairment, however, any such error was harmless because the ALJ considered Plaintiff's claimed physical limitations in determining her residual functional capacity.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding any error in failing to find an impairment is severe is harmless where ALJ considered limitations allegedly posed by that impairment).

The ALJ addressed Plaintiff's allegations of joint and back pain, diminished range of motion in her back, tenderness, and weakness.  (AR 25-26.)  Despite pain and a reduced range of motion upon examination in July 2017, Plaintiff was found to have normal range of motion and full strength in September 2017.  (AR 394, 407.)  Although her physical therapist noted in March 2018 that Plaintiff was in pain and could not sustain prolonged standing or walking, on April 4, 2018, Plaintiff told Dr. Gerald Goodlow that she was doing better and going to acupuncture and physical therapy.  (AR 646, 661.)  On April 12, 2018, after several sessions, her physical therapist noted that Plaintiff demonstrated "competence" with her home exercise program and reported feeling happier and more able to walk and do chores.  (AR 646, 672.)  Despite this apparent improvement, on May 31, 2018, Plaintiff was discharged from physical therapy after three sessions because of her unexplained failure to follow up.  (AR 669.)

Additionally, the ALJ noted that a lumbar spine MRI taken on March 22, 2018 revealed only "mild degenerative changes of the lumbar spine without any significant spinal stenosis or acute abnormality" and an x-ray of the right knee in December 2018 was unremarkable, showing no significant joint disease or soft tissue abnormality.  (AR 544-45, 735-36.)  Similarly, bilateral hand x-rays taken in

---

establish the presence of at least 11 tender points.  Thus, there is no single examination in the record that satisfies the criteria for establishing fibromyalgia.

February 2019 were largely unremarkable. (AR 781-82.) Further, the ALJ pointed out that Dr. Bryan Liou conducted an examination of Plaintiff on March 25, 2019 and found that she had full strength, extension, and coordination in her arms, wrists, knees, and hips, and normal gait. (AR 1763.)

Although Plaintiff objects that her condition would "undoubtedly restrict her to less than medium work activity" (JS at 9), she fails to point to any medical records that would impose greater limitations than those found by the ALJ. For all of the above reasons, the ALJ's finding that Plaintiff could perform medium level work is reasonable and supported by substantial evidence and will not be disturbed.

Plaintiff next contends that the ALJ erred in failing to include additional limitations based on her mental impairments. Specifically, Plaintiff argues that the ALJ failed to incorporate the limitations assessed by Dr. R. Waranch, a state agency psychologist who reviewed the medical records after Plaintiff sought reconsideration of the agency's denial of her claims. (JS at 9-12.) For the following reasons, the Court agrees that the ALJ erred and finds this issue must be revisited on remand.

On December 27, 2017, Dr. Waranch completed an assessment of Plaintiff's mental functional capacity based on her healthcare provider's records from September to December 2017. (AR 91.) In a mental residual functional capacity assessment form, Dr. Waranch indicated that Plaintiff would have moderate limitations in her ability to perform sustained work activity in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately

6

to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (AR 94-96.) Dr. Waranch noted that Plaintiff would "have difficulty with more detailed and complex instructions." (AR 95.) Dr. Waranch further explained that Plaintiff would be able to interact with others in the workplace if contact were "intermittent and not prolonged" but would be able to complete a workday/workweek without interruption and at a consistent pace and would be capable of adapting to changes in the workplace "related to performing simple tasks." (AR 96.)

The ALJ noted that Dr. Waranch's opinion was "persuasive" and found it consistent with Plaintiff's activities of daily living, her limited and conservative treatment, and "the lack of evidence of significant symptomatology despite noncompliance with treatment." (AR 27.) Notwithstanding the ALJ's apparent acceptance of Dr. Waranch's opinion, the ALJ included only one mental limitation in Plaintiff's residual functional capacity, namely, that she could perform "detailed but not complex tasks." (AR 24.)

At the administrative hearing, the vocational expert testified, in response to a hypothetical question regarding an individual who could work at the *light* level and perform detailed but not complex tasks, that such an individual could not perform Plaintiff's prior work. (AR 59.)[5] The vocational expert thereafter testified that work existed in the national economy for, first, an individual who could work at the light level and would be restricted to detailed tasks and no more than superficial contact with the public; and, second, an individual who could work at the light level on no more than simple, routine, and repetitive tasks with only superficial contact

---

[5] Notably, the ALJ did not pose a hypothetical question that actually encapsulated the residual functional capacity determination that was set forth in the decision, i.e., medium level work with a restriction to detailed but not complex tasks. (*See* AR 59-61.) The Court need not and does not decide whether that error alone would require remand.

with the public. (AR 59-61.)  In response to Plaintiff's counsel's questions, the vocational expert testified that no work would be available for an individual who would be "off task" for ten minutes each hour or who could work at only 70% of the rate of other employees. (AR 61-63.)

"The hypothetical an ALJ poses to a vocational expert, which derives from the [residual functional capacity], must set out *all* the limitations and restrictions of the particular claimant.  Thus, a [residual functional capacity] that fails to take into account a claimant's limitations is defective." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (citation omitted).  Here, the ALJ purported to accept Dr. Waranch's opinion with its assessed limitations but did not include those limitations in the residual functional capacity nor in the hypothetical question to the vocational expert.  That was error under *Valentine*.

Defendant contends, nevertheless, that the ALJ "properly interpreted [Dr. Waranch's] limitations as consistent with work," in light of the ALJ's findings regarding Plaintiff's testimony. (JS at 18.)  Furthermore, Defendant devotes a great deal of its argument to the import of the new regulations regarding the evaluation of medical evidence. (JS at 14-17.)  Defendant's position, it appears, is that the regulations allow the ALJ to indicate acceptance of Dr. Waranch's opinion in spirit but then to disregard the opinion in practice.  The Court rejects this argument.  The revised regulations provide that the ALJ must focus "on the persuasiveness of the medical opinion[s]" based on factors such as supportability, consistency, and so on, and must then explain how persuasive she finds that opinion. (JS at 15.)  Here, the ALJ explicitly noted that Dr. Waranch's opinion was persuasive, without qualification, but failed to include any of the limitations found by Dr. Waranch.[6]

---

[6] Moreover, the Court notes that the single mental limitation that the ALJ incorporated in the residual functional capacity, - that Plaintiff could perform "detailed but not complex tasks," – itself is not consistent with Dr. Waranch's opinion finding that Plaintiff would have difficulty with "more detailed and complex instructions." (AR 95.)

8

Because the ALJ did not provide a rational explanation for this failure, remand is warranted on this issue.

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ erred in rejecting her testimony that she could not work due to pain, insomnia, depression, anxiety, and PTSD. (JS at 21-26 .) For the following reasons, the Court concludes that the ALJ did not err.

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 24-25), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his] . . . ability to perform work-related activities." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ must provide specific, clear and convincing reasons for rejecting the claimant's statements. *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted). The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

Plaintiff testified that she was fired in December 2018 from her last job as a referral coordinator for medical equipment because she has really poor concentration, worked slowly, and made a lot of mistakes such as giving out the wrong information. (AR 39, 41, 48.) Plaintiff testified that she was also fired from her previous job because of her problems with concentrating and making mistakes. (AR 50.)

At the May 2019 hearing, Plaintiff testified that she cannot work due to "lower-back pain, headaches, insomnia, depression, numbness, my hands, my feet,

9

stiffness." (AR 42.) She testified that she is in pain "24/7" and that her whole body aches. (AR 42.) She testified that she takes Gabapentin for nerve pain, Cyclobenzaprine for muscle spasms and stiffness, Hydroxychloroquine for lupus and arthritis, Cymbalta for anxiety and chronic pain, and Ibuprofen as needed for severe pain. (AR 43.) She testified that she is able to drive, which she does once a week. (AR 44.) She testified that she gets in social groups but that her former coworkers would complain that she wasn't doing what she was supposed to be doing. (AR 45, 46.) Plaintiff testified that she is very forgetful, has very poor concentration, and finds it very hard to focus. (AR 46.) She testified that her medications do not appear to help and in fact cause headaches and constipation. (AR 46.) She testified that she can no longer complete tasks easily because she has no energy. (AR 48.) She testified that she suffers from chronic pain in her lower back that "shoots" to her legs. (AR 50.) She estimated that she spends 18 hours laying down in a typical day because she is "very tired, no energy, no desire, no interest, in pain," and that three or four days per week she cannot get out of bed at all. (AR 51.) She testified that she has three or four "good days" each month and that she walks for exercise on those days. (AR 51.) She testified that her hands are very weak and she can no longer open jars, cut things, or tie her shoes. (AR 52.) She testified that she could not lift a full gallon container because she lacks the strength. (AR 53-54.) She testified that her adult daughter helps wash and dress her because she is no longer able to do so. (AR 54.) Plaintiff testified that she suffers from nightmares and flashbacks that she believes are symptoms of PTSD from when she suffered domestic violence. (AR 56.)

The ALJ found that Plaintiff's testimony was not entirely consistent with the medical and other evidence in the record. (AR 25.) The ALJ rejected Plaintiff's account of her limitations because: (1) it conflicted with the objective evidence; (2) her treatment was generally conservative; (3) she was not compliant with treatment

\\

recommendations; and (4) there was a gap in the mental health treatment records. (AR 26-27.)

Generally speaking, these are legitimate reasons for discounting a claimant's credibility. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (explaining ALJ may consider fact that claimant was receiving conservative treatment and failure to follow a course of treatment in making adverse credibility determination); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (holding "unexplained, or inadequately explained, failure to seek treatment" may be basis for an adverse credibility finding); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (holding inconsistencies between subjective complaints and specific medical evidence constitute "significant and substantial reasons" for finding a claimant's testimony less than credible). Furthermore, as follows, the reasons given by the ALJ are supported by substantial evidence in the record.

The ALJ noted that although some of the medical records supported Plaintiff's claims of tenderness, muscle spasms, and some range of motion limitations, such findings were not consistent and, at other times, Plaintiff was found to retain full muscle strength, a normal gait, and the ability to perform home exercises. (AR 26-27, 407, 1763.) The ALJ pointed to medical records that showed Plaintiff was discharged from her physical therapy program because of her failure to appear. (AR 25, 669.) As for her mental health, the ALJ noted that in September 2017, Plaintiff complained of depression, anxiety, and some PTSD symptoms but was not undergoing counseling or taking medication at that time. (AR 26.) Subsequently she was prescribed Cymbalta but it was noted that she was not taking it as directed. (AR 26, 420.) In October 2017, Plaintiff was offered intensive outpatient treatment but did not appear for it until two weeks after her referral and then "could not promise" to attend per the group schedule. (AR 438.)

The ALJ noted that the records evidenced a "significant gap in mental health treatment," with March 13, 2019 medical notes reflecting that she had not been

evaluated in a year. (AR 26, 1546.) Plaintiff was again offered intensive outpatient treatment but had difficulties with her schedule and demonstrated an inability to commit to a program. (AR 1634, 1672, 1711.) On March 22, 2019, the provider noted that Plaintiff's referral was being reevaluated in light of her lack of compliance and commitment. (AR 1748.)

Because the ALJ's credibility finding is based on clear and convincing reasons and supported by substantial evidence, the Court will not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039. As such, remand is not warranted on this ground.

## IV. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 19, 2021

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**